UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JADALYN REICHERT,

                Plaintiff,                                      Case No.
                                                             Hon.

v.

CALHOUN COUNTY,

                Defendant.

---

Nacht & Roumel, P.C.
Amanda M. Ghannam (P83065)
Nicholas Roumel (P37056)
2921 E. Jefferson Ave., Ste. 102
Detroit, MI 48207
734-663-7550
aghannam@nachtlaw.com
nroumel@nachtlaw.com
Attorneys for Plaintiff

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff, Ms. Jadalyn Reichert, brings this Complaint against the Defendant, Calhoun County, as follows.

**INTRODUCTION**

Plaintiff, Ms. Jadalyn Reichert, was effectively forced out of her job as a Control Room Operator with the Calhoun County Sheriff's Department by the County's refusal to take adequate remedial action in response to multiple reports of egregious sexual harassment by a coworker, Deputy Robert Coady. After Ms. Reichert rejected Mr. Coady's sexual advances, Mr. Coady began to send her vulgar, sexually explicit, and racially charged messages and photos; shared intimate photos of Ms. Reichert without her consent; lurked in Ms. Reichert's work area during his break times; and approaching Ms. Reichert, rubbing her shoulders, and groping her breasts on his way

1

out, even unhooking her bra on at least one occasion. Ms. Reichert reported Mr. Coady's conduct to her superiors, but no meaningful investigation or disciplinary action occurred. Ms. Reichert took time off under the Family Medical Leave Act to heal from exacerbated symptoms of anxiety disorder and post-traumatic stress disorder caused by Mr. Coady's conduct and the County's refusal to act, and requested that the County take steps to keep Coady away from her upon her return. Instead of doing so, the County responded that it "[could not] control Deputy Coady's movements." Faced with no choice but to subject herself to ongoing verbal and physical sexual harassment at work, Ms. Reichert was forced to resign. She now brings claims for sex discrimination, sexual harassment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and the Elliott-Larsen Civil Rights Act, disability discrimination pursuant to the Americans with Disabilities Act and Persons with Disabilities Civil Rights Act, and retaliation pursuant to the Family Medical Leave Act.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Jadalyn Reichert, is a 27-year-old woman and a former employee of Defendant.

2.      Defendant, Calhoun County, is a political subdivision of the State of Michigan, located in the Western District of Michigan.

3.      This Court has federal question jurisdiction pursuant to 28 U.S.C. 1331.

4.      Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. 1367 as they arise from the same case and controversy.

5.      Venue in this Court is proper pursuant to 28 U.S.C. 1391 as a substantial part of the events and omissions giving rise to this Complaint occurred in Calhoun County, Michigan, within this judicial district.

6.      Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and disability discrimination in violation of the Americans with Disabilities Act; she brings this Complaint within 90 days of receipt of her notice of right to sue.

## FACTUAL ALLEGATIONS

7.      Plaintiff, Jadalyn Reichert, began her employment with the Calhoun County Sheriff's Department in March of 2019 as a Control Room Operator, when she was 24 years old.

8.      Ms. Reichert performed her duties well, earning positive performance reviews throughout the duration of her employment.

9.      As the Control Room Operator, Ms. Reichert was the "eyes and ears" of the Calhoun County Jail, keeping a close eye on the jail's happenings at all times.

10.     The Control Room where she worked was, in Ms. Reichert's own words, like a "bubble."

11.     Other employees came in and out of Ms. Reichert's "bubble" frequently, often knocking or pulling at the door until Ms. Reichert let them in.

12.     One officer in particular, Deputy Robert Coady, began to spend an excessive amount of time in the Control Room with Ms. Reichert.

13.     Coady started off acting friendly towards Ms. Reichert.

14.     Coady's friendliness soon turned to flirtation, as within a few months of Ms. Reichert's start date, Coady told her he "had the hots" for her.

15.     Ms. Reichert did not initially reject Coady's flirtations; the two very briefly exchanged romantic messages and intimate photos.

16.     However, after about three weeks, Ms. Reichert began a romantic relationship with her current boyfriend.

17.     Ms. Reichert then, in no uncertain terms, told Coady that his advances had to stop because she had a boyfriend and Coady's actions were "too much."

18.     Instead of stopping, Coady, apparently enraged that Ms. Reichert was dating someone else, escalated his advances, which he now knew were unwanted.

19.     Coady began to harass Ms. Reichert by asking her to send him nude photos; telling her that he was "about to go into the bathroom and jack off" while they were both at work; begging her to come over to his house to engage in sexual activity; and making vulgar, sexually explicit, and racially charged comments such as "you're the perfect white girl I want to fuck."

20.     Coady also sent Ms. Reichert sexually explicit messages and photos via the popular disappearing-messaging app Snapchat while they were both at work.

21.     Further, Coady had saved intimate photos of Ms. Reichert without her knowledge or consent.

22.     In early spring 2021, Coady went so far as to share the intimate photos with other male County employees who worked with him on the "C Squad" shift.

23.     One of the "C Squad" employees came to Ms. Reichert and informed her that Coady was showing others the photos.

24.     Ms. Reichert was shocked, horrified, and humiliated.

25.     Ms. Reichert confronted Mr. Coady, who threatened to keep showing others the photos if she refused to submit to his sexual advances.

26.     Apparently emboldened by Ms. Reichert's humiliation, Coady then began a pattern of inappropriately touching and groping Ms. Reichert.

4

27.     Whenever Coady worked overtime (approximately twice per week), he entered the Control Room under the guise of having a legitimate work concern or spending his break time in the room.

28.     While lurking in the Control Room, Coady continued to make unwanted and unwelcome sexual comments and advances, including but not limited to:

- "Why don't you come over to my house and let me fuck you on my red couch?";

- "Man, your ass is so perfectly thick";

- "Please come over, you're the only white girl I've wanted to fuck"; and

- "I could give you a better orgasm than your boyfriend if you would just give me the chance".

29.     Coady would then approach Ms. Reichert on his way out, rub her shoulders, put his hands down her shirt, and grope her breasts.

30.     On at least one occasion, while rubbing Ms. Reichert's shoulders, Coady leaned down and whispered in her ear "let me just fuck you already."

31.     On at least one occasion, Coady grabbed Ms. Reichert's inner thigh, near her genital area.

32.     On at least one occasion, Coady reached down Ms. Reichert's shirt and unhooked her bra, leaving her unable to fix it until her next break.

33.     The first time Coady assaulted Ms. Reichert in this manner, she was completely taken aback and did not fully process what was occurring until after the assault was complete.

34.     On subsequent occasions, although Ms. Reichert regularly told Coady to stop, clearly stating "you need to stop touching me like that. I have a boyfriend and I don't appreciate it," and asked him "can you please take your hands off me?", Coady was not deterred.

35.     On some occasions, when Coady saw Ms. Reichert's boyfriend, who was also employed by the County during this time, on the Control Room's cameras, he commented "I should probably leave since your boyfriend is going to be here soon."

36.     Ms. Reichert began to fear and dread working the same shifts as Coady, knowing what to expect and feeling powerless to stop it.

37.     As one of the youngest employees of the Sheriff's Department, and one of few women, Ms. Reichert was terrified to speak up.

38.     On or about September 2, 2021, the situation reached a breaking point when Coady called Ms. Reichert a "slut" in front of a group of coworkers.

39.     At the end of her shift, Ms. Reichert reported Coady's conduct to her superiors, Sergeants Lawrence Green and Kurt Weigle.

40.     The Sergeants appeared to listen sincerely to Ms. Reichert's report and indicated they would take steps to initiate an investigation the following day.

41.     Unfortunately, that investigation did not lead to results.

42.     On September 3, 2021, Coady was asked to leave work, but Ms. Reichert learned that Coady had been placed on a brief paid leave – a "slap on the wrist" at the most.

43.     After leaving work, Coady called, text-messaged, and attempted to contact Ms. Reichert via social media repeatedly; she ignored him.

44.     When Ms. Reichert informed the investigator, Lieutenant Aaron Wiersma, that she wished to press charges against Coady, Lieutenant Wiersma merely told her: "you know right now it's 'he said, she said'" and never followed up.

45.     Ms. Reichert was interviewed, but was never told anything else about the investigation or its results.

46.     Instead, she only found out that Coady was still working for the County on September 18, when she saw him at work and immediately began experiencing symptoms of a panic attack.

47.     To this day, Ms. Reichert is not aware of any discipline or corrective action issued to Coady by the County.

48.     The harassment and the County's failure to properly investigate and address it caused Ms. Reichert to experience severely exacerbated symptoms of anxiety disorder and post-traumatic stress disorder, including crying spells and increased anxiety.

49.     As a result, Ms. Reichert took leave pursuant to the Family Medical Leave Act.

50.     She also requested, as an accommodation for these disabilities, that the County take steps to ensure that she would not have to interact with Coady upon her return, such as ensuring that they worked different shifts and Coady not be permitted to work overtime on Ms. Reichert's shifts.

51.     Ms. Reichert provided the County with all of the appropriate FMLA documentation from her psychiatrist.

52.     But instead of supporting Ms. Reichert, on October 5, 2021, the County insisted that Ms. Reichert submit to a "Fit for Duty" exam or independent medical examination ("IME").

53.     The County told Ms. Reichert that she would be fired if she did not take the exam.

54.     The IME physician, who was unfamiliar with Ms. Reichert, the harassment she had endured, or her medical history, determined that Ms. Reichert was able to return to work, but recommended that contact with Coady be "limited or deterred."

55.    The IME physician stated in the determination that Ms. Reichert had been "calm" throughout the process, but after the exam was over, separately texted Ms. Reichert to recommend she seek additional therapy.

56.    The IME process, and having to re-live the harassment and recount it to a stranger, was humiliating and traumatic for Ms. Reichert.

57.    Ms. Reichert's psychiatrist subsequently opined that the IME had "flooded her and worsened her condition with frequent crying spells, mood swings, interfering with her sexual relations with her boyfriend, ruminations, and flashbacks."

58.    On October 16, 2021, Ms. Reichert's psychiatrist advised that Ms. Reichert was unable to work and should remain on leave until mid-December 2021.

59.    Ms. Reichert again provided her physician's paperwork to the County.

60.    On November 1, 2021, Ms. Reichert reported to Lieutenant Matthew Gault that she had learned that Coady was telling other County employees that his sexual harassment was not harassment, but a "mutual thing."

61.    On November 4, 2021, Ms. Reichert received a letter from Kim Archambault, Defendant's HR and Labor Relations Director.

62.    Ms. Archambault stated that Defendant would not ensure that Coady would not have contact with Ms. Reichert because it "[could not] control Deputy County's movements throughout the entire facility and common areas" and that if Coady harassed Ms. Reichert again, her only recourse was to "contact the supervisor on duty."

63.    On information and belief, Defendant intended for Ms. Reichert to resign her employment or knew that her resignation was a foreseeable result of its conduct.

64.     Faced with the County's inaction, the stigma associated with Coady's conduct, exacerbated symptoms of anxiety and post-traumatic stress disorder, and no choice but to continue seeing her harasser at work, Ms. Reichert was forced to resign.

65.     On the other hand, on information and belief, Coady has faced no discipline whatsoever.

## COUNT I
## Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964
## 42 U.S.C. 2000e et seq.

66.     At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

67.     Plaintiff is a member of a protected class based on her sex (female).

68.     Defendant subjected Plaintiff to adverse employment actions, including refusing to take adequate remedial action in response to Plaintiff's reports of sexual harassment and constructively discharging Plaintiff's employment.

69.     Defendant did not subject employees outside Plaintiff's protected class to such adverse employment actions.

70.     Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her sex.

71.     But for Plaintiff's sex, Defendant would not have subjected Plaintiff to such adverse employment actions.

72.     Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

## COUNT II
## Hostile Work Environment Sexual Harassment in Violation of

**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. 2000e et seq.**

73.     At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

74.     Plaintiff is a member of a protected class based on her sex (female).

75.     During Plaintiff's employment, Defendant's employees subjected Plaintiff to severe and pervasive unwelcome sexual conduct and communication that was intended to and did substantially interfere with Plaintiff's employment.

76.     This unwelcome conduct created a hostile work environment based on Plaintiff's sex.

77.     This conduct was objectively and subjectively offensive such that a reasonable person would find it hostile or abusive.

78.     Plaintiff found this conduct both objectively and subjectively offensive.

79.     Defendant had both actual and constructive notice that its employees had created a sexually and/or sex-based hostile and offensive work environment for Plaintiff.

80.     Plaintiff opposed and appropriately reported the unwelcome and offensive conduct to Defendant.

81.     Defendant failed to take effective remedial action to stop the harassment.

82.     Defendant's actions were taken with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

**COUNT III**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. 2000e(3)(a)**

83.     At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

84.     Plaintiff engaged in protected activity by reporting sexual harassment by a coworker to her supervisors.

85.     Defendant subjected Plaintiff to adverse employment actions including but not limited to refusing to take adequate remedial action to address her complaints of sexual harassment and constructively discharging her employment.

86.     Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

87.     But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

88.     Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

**Count IV**
**Sex Discrimination in Violation of the Elliott-Larsen Civil Rights Act**
**M.C.L. 37.2202 et seq.**

89.     At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2201 et seq.

90.     Plaintiff is a member of a protected class based on her sex (female).

91.     Defendant subjected Plaintiff to adverse employment actions, including refusing to take adequate remedial action in response to Plaintiff's reports of sexual harassment and constructively discharging Plaintiff's employment.

92.      Defendant did not subject employees outside Plaintiff's protected class to such adverse employment actions.

93.      Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her sex.

**COUNT V**
**Hostile Work Environment Sexual Harassment in Violation of**
**the Elliott-Larsen Civil Rights Act**
**M.C.L. 37.2202 et seq.**

94.      At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act.

95.      Plaintiff is a member of a protected class based on her sex (female).

96.      During Plaintiff's employment, Defendant's employees subjected Plaintiff to severe and pervasive unwelcome sexual conduct and communication that was intended to and did substantially interfere with Plaintiff's employment.

97.      This unwelcome conduct created a hostile work environment based on Plaintiff's sex.

98.      This conduct was objectively and subjectively offensive such that a reasonable person would find it hostile or abusive.

99.      Plaintiff found this conduct both objectively and subjectively offensive.

100.      Defendant had both actual and constructive notice that its employees had created a sexually and/or sex-based hostile and offensive work environment for Plaintiff.

101.      Plaintiff opposed and appropriately reported the unwelcome and offensive conduct to Defendant.

102.      Defendant failed to take effective remedial action to stop the harassment.

## COUNT VI
### Retaliation in Violation of the Elliott-Larsen Civil Rights Act
### M.C.L. 37.2202(a)(1)

103.    At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2202 et seq.

104.    Plaintiff engaged in protected activity by complaining about Defendants' hostile and discriminatory work environment.

105.    Defendant subjected Plaintiff to adverse employment actions, including but not limited to refusing to take adequate remedial action in response to her reports of sexual harassment and constructively discharging her employment.

106.    Defendants' actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

107.    But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse actions.

## COUNT VII
### Retaliation in Violation of the Family Medical Leave Act
### 29 U.S.C. 2601 et seq.

108.    At all relevant times, Defendant was an employer as defined by the Family Medical Leave Act, 29 U.S.C. 2611(4), and Plaintiff was an eligible employee as defined by 29 U.S.C. 2611(2).

109.    Plaintiff engaged in activity protected by the FMLA by taking leave to which she was entitled under the Act for her own serious health condition.

110.    Defendant retaliated against Plaintiff by subjecting her to adverse employment actions including but not limited to refusing to take adequate remedial action in response to Plaintiff's reports of sexual harassment and constructively discharging Plaintiff.

111.    Defendant's actions in violation of the FMLA were willful.

112.    Defendant's actions were motivated by Plaintiff's exercise of rights provided to her by the FMLA.

113.    But for Plaintiff's exercise of her FMLA rights, Defendant would not have subjected Plaintiff to adverse employment actions.

## COUNT VIII
### Disability Discrimination in Violation of the Americans with Disabilities Act
### 42 U.S.C. 12112 et seq.

114.    At all relevant times, Defendant was a covered entity as defined by the Americans with Disabilities Act, 42 U.S.C. 12111(2).

115.    Plaintiff was a "qualified individual with a disability" as defined by 42 U.S.C. 12131(2) due to her anxiety disorder and post-traumatic stress disorder, which substantially limit her major life activities including sleeping, interacting with others, and regulating her mood.

116.    At all relevant times, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodation.

117.    Defendant subjected Plaintiff to adverse employment actions, including refusing to take adequate remedial action to address her complaints of sexual harassment and constructively discharging her employment.

118.    Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her disabilities.

119.    But for Plaintiff's disabilities, Defendant would not have subjected her to such adverse actions.

120.    Defendant's actions in violation of the ADA were willful.

## COUNT IX
### Disability Discrimination in Violation of the Persons with Disabilities Civil Rights Act

**M.C.L. 37.1101 et seq.**

121.    At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of Michigan's Persons with Disabilities Civil Rights Act.

122.    Plaintiff had a disability within the meaning of M.C.L. 37.1103(d) including anxiety disorder and post-traumatic stress disorder, which substantially limit her major life activities including but not limited to sleeping, interacting with others, and regulating her mood.

123.    At all relevant times, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodation.

124.    Defendant subjected Plaintiff to adverse employment actions, including refusing to take adequate remedial action to address her complaints of sexual harassment and constructively discharging her employment.

125.    Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her disabilities.

126.    But for Plaintiff's disabilities, Defendant would not have subjected her to such adverse actions.

127.    Defendant's actions in violation of the PWDCRA were willful.

### DAMAGES

128.    As a direct and proximate result of Defendant's unlawful and discriminatory conduct, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and impairment of her earning capacity and ability to work, and will so suffer in the future.

129.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment, and will so suffer in the future.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## RELIEF REQUESTED

Wherefore, Plaintiff Jadalyn Reichert requests this Honorable Court grant the following relief:

- Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Elliott-Larsen Civil Rights Act;

- Award Plaintiff all lost wages, past and future, to which she is entitled;

- Award Plaintiff compensatory damages;

- Award Plaintiff punitive damages;

- Award Plaintiff liquidated damages pursuant to the FMLA;

- Award Plaintiff reasonable attorney's fees, costs, and interest, and

- Award such other relief as this Court deems just and proper.

Wherefore, Plaintiff respectfully requests this Court enter judgment against Defendant and all relief requested in this Complaint.

Respectfully submitted,

By: */s/ Amanda M. Ghannam*

Nicholas Roumel (P37056)
Amanda M. Ghannam (P83065)
Nacht & Roumel, P.C.
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nroumel@nachtlaw.com
aghannam@nachtlaw.com

Dated: January 22, 2023

16

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2023, I electronically filed the foregoing instrument with the Clerk of the Court using the ECF system and that a copy was electronically served on all counsel or parties of record via the ECF system, and to any counsel or party not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid, addressed to the above, and depositing said envelope and its contents in a receptacle for the U.S. mail.

*/s/ Amanda M. Ghannam*